**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmd.uscourts.gov

**In re:**

**KEVIN QUIJANO**  　　　　　　　　　　　　　　　　**Case No.: 6:15-bk-09490-KSJ**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**Chapter 11**
　　**Debtor.**
_____/

> **NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**
>   　Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at 400 West Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the movant's attorney, BransonLaw, PLLC, 1501 East Concord Street, Orlando, Florida 32803, and any other appropriate persons within the time allowed.
>   　If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

**MOTION FOR**
**APPROVAL OF PERMANENT MORTGAGE MODIFICATION AGREEMENT**
(Re: 327 Desoto Circle, Orlando, Florida 32804, loan #****1089)

　　　　Comes now the Debtor, **KEVIN QUIJANO**, by and through his undersigned Counsel, and files this Motion for Approval of Permanent Mortgage Modification Agreement, and in support thereof would state as follows:

　　　　1.　　The Debtor had sought a mortgage modification with Select Portfolio Servicing, Inc. ("SPS"), as servicer for Bank of New York Mellon, F/K/A Bank of New York, as Trustee, in trust for the registered holders of CWALT, Inc. Alternative Loan Trust 2007-19, Mortgage Pass-Through Certificates, Series 2007-19.

　　　　2.　　 SPS has offered the Debtor a loan modification and the Debtor has accepted the terms, as set forth in the attached Loan Modification Agreement.

3. The modified payment is $6,277.48, of which $4,955.18 is principal and interest and the balance includes escrow for taxes and insurance, and shall begin on December 1, 2016.

4. The "New Principal Balance" on the note is $1,632,495.36, of which $489,748.61 shall be deferred (the "Deferred Principal Balance") and shall not accrue interest or be amortized, resulting in an "Interest Bearing Principal Balance" of $1,142,746.75 which shall be amortized as set forth below:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment | Estimated Monthly Escrow Payment* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-21 | 4.250% | N/A | $4,955.18 | $1,322.30* | $6,277.48* | 12/01/2016 | 248 |

*adjusts periodically

5. The "New Principal Balance" and any other amounts still owed according to the terms of the Mortgage Loan Modification Agreement, including the "Deferred Principal Balance", shall be due and payable in full by the earliest of 1) the sale or transfer of any of Debtors' interest in the property subject to the mortgage, 2) the date Debtors pay the entire "Interest Bearing Principal Balance", or 3) the "Maturity Date" of July 1, 2037.

6. The modification agreement should be filed in the public records of Orange County, Florida.

**WHEREFORE**, Debtor respectfully requests this Honorable Court enter its Order to Approve the Mortgage Loan Modification Agreement, and grant such other relief that may be deemed just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 7th day of December 2016.

/s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 060769

E-mail: *jeff@bransonlaw.com*
**BransonLaw, PLLC**
1501 E. Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559
Attorney for Debtor

### **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing has been sent by either electronic transmission or U.S. Mail this 7th day of December, 2016, to: Debtor; Select Portfolio Servicing, Inc., Attn. Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301; Bank of New York Mellon, F/K/A Bank of New York, as Trustee, in trust for the registered holders of CWALT, Inc. Alternative Loan Trust 2007-19, Mortgage Pass-Through Certificates, Series 2007-19, c/o Anila S. Rasul, Esquire, SHD Legal Group, PA, PO Box, 19519, Fort Lauderdale, Florida 33318; **The Office of the United States Trustee**, Attn: United States Trustee, Orlando, George C. Young Federal Building, 400 West Washington Street, Suite 3100, Orlando, Florida 32801.

/s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth, Esquire
**BransonLaw, PLLC**

**LIEN MODIFICATION AGREEMENT**

This Lien Modification Agreement ("Agreement") is effective November 1, 2016, between KEVIN QUIJANO, ("Property Owner") and Select Portfolio Servicing, Inc., acting on behalf of the lien holder, ("Lien Holder"). If Property Owner's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the lien documents dated May 30, 2007, securing the original principal sum of $944,050.00 ("Lien Documents"), which encumber the real and personal property described in the Lien Documents (defined in the Lien Documents as the "Property"), known as

327 DESOTO CIRCLE
ORLANDO, FL 32804

*Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Lien Documents remain in effect. Lien Holder continues to have an enforceable lien on the Property. This lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.*

1. Property Owner Representations and Covenants. Property Owner certifies, represents, covenants, and agrees as follows:

    a. Property Owner is experiencing a financial hardship, and as a result, (i) is in default under the Lien or default is imminent, and (ii) Property Owner does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    b. There has been no impermissible change in the ownership of the Property since Property Owner signed the Lien.

    c. If requested by Lender, Property Owner has provided documentation for all income that they receive.

    d. All documents and information Property Owner has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

    e. Property Owner has made or will make all payments required under a trial modification plan or lien workout plan, if applicable.

    f. The property is neither in a state of disrepair, nor condemned.

    g. Property Owner is not a party to any litigation involving the Lien Documents, except to the extent the Property Owner may be a defendant in a foreclosure action.

2. The Modification. If Property Owner's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Lien Documents will automatically become modified on November 1, 2016 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Property Owner understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on December 1, 2016.

    a. The Maturity Date will be: July 1, 2037.

    b. The modified principal balance to satisfy the Lien will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lien Holder but not previously credited to the account associated with the Lien Documents The new principal balance to satisfy the Lien will be $1,632,495.36 (the "New Principal Balance"). Property Owner understands that by agreeing to add the Unpaid Amounts to the outstanding balance to satisfy the Lien, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Property Owner also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding balance to satisfy the Lien, which would not happen without this Agreement.

    c. $489,748.61 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. Property Owner will not pay interest or make monthly payments on the Deferred Principal Balance. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $1,142,746.75. Interest at the rate of 4.250% will begin to accrue on the Interest Bearing Principal Balance as of November 1, 2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on December 1, 2016. The payment schedule for the modified Lien Documents is as follows:



| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-248 | 4.250% | N/A | $4,955.18 | $1,322.30, may adjust periodically | $6,277.48, may adjust periodically | December 1, 2016 | 248 |

**A final balloon payment on the Interest Bearing Principal Balance of $783,030.09 is due on the Maturity Date.**

The Deferred Principal Balance of $489,748.61 will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of the New Principal Balance has been paid. Property Owner will pay interest at a yearly rate of 4.250%.

BALLOON NOTICE. THE AMORTIZATION TERM OF THE LIEN IS 480 MONTHS. AS A RESULT, PROPERTY OWNER WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING ON THE MATURITY DATE. LIEN HOLDER HAS NO OBLIGATION TO REFINANCE THIS LIEN, INCLUDING THE DEFERRED PRINCIPAL BALANCE, AT THE END OF TERM. THEREFORE, PROPERTY OWNER MAY BE REQUIRED TO REPAY THE LIEN OUT OF ASSETS THEY OWN, OR PROPERTY OWNER MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LIEN. ASSUMING ANOTHER LENDER REFINANCES THIS LIEN AT MATURITY, PROPERTY OWNER MAY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THE LIEN. PROPERTY OWNER MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

   d. Property Owner has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $1,322.30. Property Owner's total monthly payment of principal, interest and escrow will therefore be equal to $6,277.48. Property Owner acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Property Owner will be notified of any changes.

3. <u>Other Agreements</u>. Property Owner and Lien Holder also agree to the following:

   a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Property Owner previously entered into with Lien Holder.

   b. The Lien Documents, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c. All terms of the Lien Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the terms contained in the Lien Documents.

   d. All covenants, agreements, and requirements of the Lien Documents, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments under the Lien Documents remain in full force and effect.

e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Lien Documents as amended by this Agreement, within ten (10) days after receipt of the Lien Holder's request, Property Owner will execute, acknowledge, initial, and deliver to the Lien Holder any documentation the Lien Holder deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Property Owner fails to do so, Property Owner will be liable for any and all loss or damage which the Lien Holder reasonably sustains as a result of Property Owner's failure. At Lien Holder's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Property Owner elects not to sign any such corrective documentation, the terms of the original Lien Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Property Owner will not be eligible for a modification.

f. The mortgage insurance premiums, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Property Owner may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

g. As of the Modification Effective Date, notwithstanding any other provision of the Lien Documents, Property Owner agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lien Holder's prior written consent, the Lien Holder may, at its option, require immediate payment in full of all sums secured by the Lien Documents. However, the Lien Holder shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lien Holder exercises this option, the Lien Holder shall give Property Owner notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which all sums secured by the Lien Documents must be paid. If these sums are not paid prior to the expiration of this period, the Lien Holder may invoke any remedies permitted by the Lien Documents without further notice or demand on Property Owner.

h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Mortgage. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j. If Property Owner is in bankruptcy upon execution of this document, Property Owner will cooperate fully with Lien Holder in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Property Owner understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Lien Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k. In agreeing to the changes to the Lien Documents as reflected in this Agreement, Lien Holder has relied upon the truth and accuracy of all of the representations made by Property Owner, both in this Agreement and in any documentation provided by or on behalf of Property Owner in connection with this Agreement. If Lien Holder subsequently determines that such representations or documentation were not truthful or accurate, Lien Holder may, at its option, rescind this Agreement and reinstate the original terms of the Lien Documents as if this Agreement never occurred.

The Property Owner(s) and Lien Holder have signed this Agreement as of the Effective Date.

Property Owner Signature: _____   Date: 11/18/16

Property Owner Signature: _____   Date: _____

Select Portfolio Servicing, Inc. (On behalf of Lien Holder): _____   Date: _____





MA001                           00107292000006040710

**LIEN MODIFICATION AGREEMENT**

This Lien Modification Agreement ("Agreement") is effective November 1, 2016, between KEVIN QUIJANO, ("Property Owner") and Select Portfolio Servicing, Inc., acting on behalf of the lien holder, ("Lien Holder"). If Property Owner's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the lien documents dated May 30, 2007, securing the original principal sum of $944,050.00 ("Lien Documents"), which encumber the real and personal property described in the Lien Documents (defined in the Lien Documents as the "Property"), known as

    327 DESOTO CIRCLE
    ORLANDO, FL 32804

*Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Lien Documents remain in effect. Lien Holder continues to have an enforceable lien on the Property. This lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.*

1. Property Owner Representations and Covenants. Property Owner certifies, represents, covenants, and agrees as follows:

    a. Property Owner is experiencing a financial hardship, and as a result, (i) is in default under the Lien or default is imminent, and (ii) Property Owner does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    b. There has been no impermissible change in the ownership of the Property since Property Owner signed the Lien.

    c. If requested by Lender, Property Owner has provided documentation for all income that they receive.

    d. All documents and information Property Owner has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

    e. Property Owner has made or will make all payments required under a trial modification plan or lien workout plan, if applicable.

    f. The property is neither in a state of disrepair, nor condemned.

    g. Property Owner is not a party to any litigation involving the Lien Documents, except to the extent the Property Owner may be a defendant in a foreclosure action.

2. The Modification. If Property Owner's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Lien Documents will automatically become modified on November 1, 2016 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Property Owner understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on December 1, 2016.

    a. The Maturity Date will be: July 1, 2037.

    b. The modified principal balance to satisfy the Lien will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lien Holder but not previously credited to the account associated with the Lien Documents The new principal balance to satisfy the Lien will be $1,632,495.36 (the "New Principal Balance"). Property Owner understands that by agreeing to add the Unpaid Amounts to the outstanding balance to satisfy the Lien, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Property Owner also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding balance to satisfy the Lien, which would not happen without this Agreement.

    c. $489,748.61 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. Property Owner will not pay interest or make monthly payments on the Deferred Principal Balance. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $1,142,746.75. Interest at the rate of 4.250% will begin to accrue on the Interest Bearing Principal Balance as of November 1, 2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on December 1, 2016. The payment schedule for the modified Lien Documents is as follows:



| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-248 | 4.250% | N/A | $4,955.18 | $1,322.30, may adjust periodically | $6,277.48, may adjust periodically | December 1, 2016 | 248 |

**A final balloon payment on the Interest Bearing Principal Balance of $783,030.09 is due on the Maturity Date.**

The Deferred Principal Balance of $489,748.61 will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of the New Principal Balance has been paid. Property Owner will pay interest at a yearly rate of 4.250%.

BALLOON NOTICE. THE AMORTIZATION TERM OF THE LIEN IS 480 MONTHS. AS A RESULT, PROPERTY OWNER WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING ON THE MATURITY DATE. LIEN HOLDER HAS NO OBLIGATION TO REFINANCE THIS LIEN, INCLUDING THE DEFERRED PRINCIPAL BALANCE, AT THE END OF TERM. THEREFORE, PROPERTY OWNER MAY BE REQUIRED TO REPAY THE LIEN OUT OF ASSETS THEY OWN, OR PROPERTY OWNER MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LIEN. ASSUMING ANOTHER LENDER REFINANCES THIS LIEN AT MATURITY, PROPERTY OWNER MAY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THE LIEN. PROPERTY OWNER MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

d. Property Owner has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $1,322.30. Property Owner's total monthly payment of principal, interest and escrow will therefore be equal to $6,277.48. Property Owner acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Property Owner will be notified of any changes.

3. <u>Other Agreements</u>. Property Owner and Lien Holder also agree to the following:

   a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Property Owner previously entered into with Lien Holder.

   b. The Lien Documents, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c. All terms of the Lien Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the terms contained in the Lien Documents.

   d. All covenants, agreements, and requirements of the Lien Documents, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments under the Lien Documents remain in full force and effect.

e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Lien Documents as amended by this Agreement, within ten (10) days after receipt of the Lien Holder's request, Property Owner will execute, acknowledge, initial, and deliver to the Lien Holder any documentation the Lien Holder deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Property Owner fails to do so, Property Owner will be liable for any and all loss or damage which the Lien Holder reasonably sustains as a result of Property Owner's failure. At Lien Holder's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Property Owner elects not to sign any such corrective documentation, the terms of the original Lien Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Property Owner will not be eligible for a modification.

f. The mortgage insurance premiums, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Property Owner may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

g. As of the Modification Effective Date, notwithstanding any other provision of the Lien Documents, Property Owner agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lien Holder's prior written consent, the Lien Holder may, at its option, require immediate payment in full of all sums secured by the Lien Documents. However, the Lien Holder shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lien Holder exercises this option, the Lien Holder shall give Property Owner notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which all sums secured by the Lien Documents must be paid. If these sums are not paid prior to the expiration of this period, the Lien Holder may invoke any remedies permitted by the Lien Documents without further notice or demand on Property Owner.

h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Mortgage. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j. If Property Owner is in bankruptcy upon execution of this document, Property Owner will cooperate fully with Lien Holder in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Property Owner understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Lien Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k. In agreeing to the changes to the Lien Documents as reflected in this Agreement, Lien Holder has relied upon the truth and accuracy of all of the representations made by Property Owner, both in this Agreement and in any documentation provided by or on behalf of Property Owner in connection with this Agreement. If Lien Holder subsequently determines that such representations or documentation were not truthful or accurate, Lien Holder may, at its option, rescind this Agreement and reinstate the original terms of the Lien Documents as if this Agreement never occurred.

The Property Owner(s) and Lien Holder have signed this Agreement as of the Effective Date.

Property Owner Signature: _____  Date: 11/18/16

Property Owner Signature: _____  Date: _____

Select Portfolio Servicing, Inc. (On behalf of Lien Holder): _____  Date: _____





0010729200000606071O